Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000670
25-FEB-2014
08:41 AM

NO. CAAP-12-0000670

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
DAVID H. KAAWA, IV, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 11-1-277K)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Leonard and Ginoza, JJ.)

Plaintiff-Appellant State of Hawai'i (State) indicted Defendant-Appellant David Kaawa, IV (Kaawa), on two counts of sexual assault. Count 1 charged Kaawa with Continuous Sexual Assault of a Minor Under the Age of Fourteen Years and alleged that during a three-year period, as part of a continuing course of conduct, Kaawa engaged in three or more acts of sexual penetration or sexual contact with the complaining witness, who was under the age of fourteen. Count 2 charged Kaawa with Sexual Assault in the First Degree and alleged that Kaawa knowingly engaged in sexual penetration with the complaining witness, who was between fourteen and sixteen years old. The complaining witness in both counts (Minor) is the daughter of Kaawa's former girlfriend, and Minor viewed Kaawa as her step-father. At the time of the alleged sexual assaults, Minor was being raised

by Kaawa, and Minor and her siblings resided with Kaawa in the same home.

After a jury trial, Kaawa was found guilty as charged on both counts. The Circuit Court of the Third Circuit (Circuit Court)[1] sentenced Kaawa to consecutive twenty-year terms of incarceration on Counts 1 and 2. The Circuit Court entered its "Judgment of Conviction and Sentence" (Judgment) on June 29, 2012.

On appeal, Kaawa contends that: (1) the Circuit Court improperly allowed evidence of Kaawa's physical abuse of Minor and her siblings and allegations of the sexual abuse of Kaawa's adopted sister by one of Kaawa's brothers, pursuant to Hawai'i Rules of Evidence (HRE) Rule 404(b) (Supp. 2013); (2) the Circuit Court's limiting instruction on the HRE Rule 404(b) evidence was inadequate to cure the taint of the "other bad acts" evidence; and (3) there was insufficient evidence to support Kaawa's convictions. As explained below, we affirm the Circuit Court's Judgment.

BACKGROUND

I.

Minor's mother (Mother) had been in a long-term relationship with Kaawa. Mother was the biological mother of Minor and her four brothers and one sister. Kaawa was not the biological father of Minor and her two oldest brothers. Kaawa and Mother were the biological parents of Minor's two youngest brothers and her sister. Kaawa, Mother, Minor, and Minor's two oldest brothers began living together when Minor was about four or five years old. The family grew to include Kaawa, Mother, Minor, and Minor's five siblings, who all resided together.

In May 2006, when Minor was twelve years old, Mother suddenly moved away, leaving all her children with Kaawa. Minor testified at trial that after Mother left, Minor slid into depression because she "didn't have a mom anymore." Kaawa told

---

[1] The Honorable Ronald Ibarra presided.

2

Minor that Mother left because "she didn't love [the children] anymore" and that Mother was not coming back. Minor believed Kaawa. Over the subsequent years, Kaawa also told Minor that Mother did not want the children, did not want to talk to the children, and did not want to have anything to do with them.

According to Minor, about a month after Mother left, Kaawa began sexually abusing Minor. Kaawa came into Minor's room late one evening, while Minor's five-year-old sister lay asleep on the bed. Kaawa was crying and said he missed Mother. Kaawa asked Minor for a hug. He then asked Minor to put her hand on his penis. When Minor did not comply, Kaawa forced Minor to place her hand on his penis and then to masturbate him. When Kaawa was done, he apologized to Minor. However, he did not stop sexually abusing Minor.

The sexual abuse progressed to Kaawa requiring Minor to regularly engage in sexual intercourse with him and to perform oral sex on him. Kaawa's sexual abuse of Minor continued unabated, and he sexually abused her for several years. Kaawa told Minor that if she reported the sexual abuse to anyone, he "could go to jail" and then all the children would be separated. Minor explained that she refrained from reporting the sexual abuse because she was scared of Kaawa and his family. Minor also did not want her siblings to be separated and did not want Kaawa to go to jail.

II.

Prior to trial, the State filed several notices of intent to use evidence pursuant to HRE Rule 404(b). These included a notice of its intent to use "[e]vidence that [Kaawa] was violent toward [Minor] and toward other children in the same home in the presence of [Minor], to show why [Minor] was afraid of him and was reluctant to come forward to testify against him." Kaawa filed a motion in limine to preclude "[t]estimonial or documentary evidence relating to any other 'bad acts' involving the defendant[.]" The Circuit Court denied this portion of Kaawa's motion in limine "subject to only the [HRE Rule] 404(b)."

3

During its case-in-chief, the State presented some evidence of Kaawa's engaging in physical violence directed at Minor and her siblings. Minor's second oldest brother (Brother 2) testified that he recalled an incident when Minor was about fifteen, in which Kaawa was hitting Minor and Minor was begging Kaawa to stop. Brother 2 also testified that Kaawa would give him and Minor's oldest brother (Brother 1) "lickins" if Kaawa discovered that they had been playing with Kaawa's Xbox 360. Brother 2 stated that Kaawa hit him with a backhand to the face after discovering Brother 2 had been sneaking into Kaawa's room to find the remote control for the Xbox, and that this happened "more than once."

In the defense case, Kaawa's counsel asked CF, the girlfriend of one of Kaawa's brothers (Uncle 1),[2] whether she had seen signs of abuse in Kaawa's family, and CF denied seeing signs of abuse. Defense counsel later asked CF whether she had the opportunity to see how Kaawa disciplined his children. After CF responded affirmatively, defense counsel asked CF to share her observations with the jury. In response, the Circuit Court asked counsel to approach the bench. At side-bar, the Circuit Court advised defense counsel that he was "opening the door." The Circuit Court stated: "You're asking about ever saw signs of abuse in the Kaawa family. You're opening the door wide open. You want to continue to go down that path?" Defense counsel stated that he was just talking about physical abuse, not sexual abuse. When the bench conference concluded, defense counsel asked CF if Kaawa ever hit Brother 2, and CF said she never saw that happen.

When Kaawa testified, he denied ever hitting the children. Kaawa stated that "I never hit my kids, and I never allow nobody for hit my kids."

_____

[2] As noted, Kaawa is not the biological father of Minor and therefore Kaawa's biological family members are not related to Minor by blood. However, for simplicity, we will use family designations in place of certain names.

4

In rebuttal, the State called Brother 1. Brother 1 testified that he recalled "plenty" of times when Minor got "lickings." He recalled one incident when Minor was sixteen and talked back to Kaawa. Kaawa became angry and grabbed Minor by the hair, and he "was just wailing on her" with an open hand, striking her on the head. Brother 1 also testified that Kaawa would give Brother 1 and Brother 2 "lickings" if they did not finish their chores. Brother 1 recalled Kaawa hitting him with an open and closed fist, a spatula, a belt, and a broomstick.

III.

Kaawa had an adopted sister (Aunt), who was about three years younger than Minor and was one of Minor's best friends. Minor and Aunt confided in each other. In the State's case-in-chief, Minor testified that when she was about fourteen or fifteen, Aunt "opened up to [Minor]" and told Minor something "personal" that had to do with "abuse."[3] In response, Minor told Aunt that Kaawa had been having sex with Minor. The two girls agreed that they would both go to Kaawa's mother (Grandmother) and tell her what was happening to them. Aunt talked to Grandmother first. In response, Grandmother yelled at Aunt, called Aunt a liar, and gave Aunt "wacks." At that time, Minor decided not to tell Grandmother about Kaawa because Minor was scared Grandmother would also call her a liar and give her "lickins."

Minor testified that she did subsequently tell Grandmother about Kaawa's sexual abuse. Grandmother telephoned Kaawa. When Kaawa arrived, Grandmother and Kaawa's father, who was also there, asked Kaawa why he was sexually abusing Minor and told Kaawa that he needed to stop. Kaawa did not say anything in response to his parents. Kaawa's parents, however, allowed Minor to go home with Kaawa. When they got home, Kaawa asked Minor why she told on him and said he would try hard to stop. Kaawa

---

[3] At the Circuit Court's prompting, the State clarified through Minor's testimony that what happened to Aunt did not involve Kaawa.

5

stopped for about two weeks, but then resumed his sexual assaults on Minor.

At trial, Minor described distinctive details about Kaawa's genitals. The State also introduced photographs of Kaawa's genitals that it had obtained through a court-ordered examination. The State never showed the photographs to Minor.

IV.

AD, Minor's friend from school, noticed that during ninth grade, Minor would come to school and would be crying. AD asked Minor what was wrong, but Minor would not say anything. AD testified that when they were in the tenth grade, Minor disclosed to AD that Kaawa was sexually abusing Minor, but made AD promise not to tell anyone.

RO was another friend of Minor. Minor testified that in her junior year, CF (Uncle 1's girlfriend) found out that Minor had told RO that Kaawa was sexually abusing Minor. CF was angry, and CF told Minor that Minor had to go to RO's house and tell RO and RO's parents and family that Minor was lying about the sexual abuse. CF told Minor to say that Minor had made up the allegation of sexual abuse because Minor was mad at Kaawa. Minor did as she was told by CF.

A teacher at Minor's school testified that Minor stated one day in class that Minor thought she was pregnant, but Minor refused to say who the father was. On September 27, 2010, a counselor (Counselor) at Minor's high school called the police after speaking to a co-worker, becoming aware of rumors circulating around school, and speaking to Minor.

On that same day, Police Officer Benjamin Galluppi (Officer Galluppi) arrived at Minor's school. CF was present when Minor was questioned by Officer Galluppi. Officer Galluppi testified that CF supplied the answers to Officer Galluppi's questions, and Officer Galluppi was not able to get any statements from Minor. Later that day, Minor and all her siblings were removed from Kaawa's home.

The next day, September 28, 2010, Minor was interviewed by Detective David Arakaki (Detective Arakaki). During that interview, Minor denied that she had been sexually abused by Kaawa. Minor told Detective Arakaki that she was a virgin, that the sexual abuse allegation was just a rumor she started when she was angry at Kaawa, and that the rumor had "spread like wildfire."

Shortly after Detective Arakaki interviewed Minor, he was contacted by Child Protective Services Supervisor Karen Kawamoto (Kawamoto). Kawamoto informed Detective Arakaki that Minor needed to be re-interviewed because Minor said that she had not told the truth to the police. On September 30, 2010, Kawamoto re-interviewed Minor. In this re-interview, Minor stated that Kaawa had been sexually abusing her about twice every three weeks. She also testified before a grand jury that Kaawa had sexually abused her practically every night, except for times when she was menstruating.

Brother 2 testified that he remembered occasions when he saw Kaawa going into Minor's room at around 9:30 or 9:45 at night. Kaawa would stay in Minor's room for half an hour and sometimes the door would be closed.

Sometime after Minor disclosed the alleged sexual abuse, Uncle 1 boarded a bus that Minor was taking to school. Minor's classmate who was on the bus testified that Uncle 1 told Minor to "stop this" and that she needed to say "it was all a lie, that she wants to come back home." Uncle 1 was yelling at Minor who looked scared and unsure of what to do. As Minor got off the bus with Uncle 1, Minor told her friends to notify school officials.

When Minor left the bus with Uncle 1, CF was waiting for them in a car. Uncle 1 and CF told Minor that she had to recant her allegations of sexual abuse and indicated that Kaawa was contemplating suicide. Uncle 1 and CF allowed Minor to leave the car after they learned that school officials had been notified.

V.

Kaawa's theory of defense was that Minor had falsely accused Kaawa of sexual abuse to get back at him for prohibiting her from dating a girl, who was significantly older than Minor,[4/] after Minor disclosed to Kaawa that she was gay.  In the defense case, Kaawa informed the Circuit Court that he wanted to recall Minor to lay the foundation for Aunt's proffered testimony that Minor told Aunt that Minor would get back at Kaawa for prohibiting Minor from dating this girl.  The Circuit Court informed the defense that if Aunt testified about private conversations with Minor, then the State may develop the circumstances relating to the conversations and also impeach Aunt.

The defense recalled Minor who testified that she and Aunt were close and that Aunt was her best friend while they were growing up.  Minor stated that she and Aunt had many private conversations and knew each other's secrets.  Minor acknowledged that she had a conversation with Aunt about two weeks before being removed from Kaawa's home, but denied that she ever told Aunt that she wanted to get back at Kaawa.

Aunt then testified that she lived with Kaawa's parents, and that she and Minor were good friends and like sisters, who shared everything with each other.  Aunt stated that the last "deep" conversation she had with Minor was two weeks before Minor and her siblings were removed from Kaawa's home.  During this conversation, Minor told Aunt that she "would get back at [Kaawa]" because Kaawa would not let Minor be with "someone who was older than her."

On cross-examination, Aunt acknowledged that she had a brother (Uncle 2), who was a different brother than Uncle 1.  The State did not pursue questions about Uncle 2 after Kaawa objected.  The State also asked Aunt about a meeting she had with Counselor.  Aunt denied that she met with Counselor and Minor on

---

[4/] Kaawa testified that the girl was twenty-five years old at the time.

December 7, 2010; that she told Minor with Counselor present that CF forced Aunt to tell lies about Minor; that she said there were Kaawa people watching what she was doing while in school; and that she said CF forced Aunt to write lies in an application for a restraining order against Minor.

Grandmother testified that she first heard about the sexual abuse allegations concerning Kaawa and Minor about two weeks before the children were removed from Kaawa's home. She testified that she would have gone to the police department and taken Minor if she believed the allegations were true. However, she did not do so because Minor told her that nothing happened.

On cross-examination by the State, Grandmother stated that she would have cooperated with the police if Kaawa had sexually abused Minor. Grandmother acknowledged that Detective Arakaki had contacted her to talk about Aunt and acknowledged that Uncle 2 was her son. Grandmother, however, denied that Detective Arakaki asked her if she knew a person with the same first name as Uncle 2, and she also denied telling Detective Arakaki that she did not know anyone by that name. Grandmother denied that she refused to talk to Detective Arakaki about the allegations concerning Kaawa. She further denied that Minor told her that Minor had been sexually abused by Kaawa.

Kaawa testified in his own defense. Kaawa repeatedly denied sexually abusing Minor. He indicated that Minor was able to describe his genitals because she may have seen him taking a shower when the door was open or using the bathroom. Kaawa denied ever hitting his children or hitting Mother.

VI.

In rebuttal, the State recalled Detective Arakaki. Detective Arakaki testified that he contacted Grandmother and told her he was investigating allegations of possible sexual assault involving Aunt and a suspect with the same first name as Uncle 2. Detective Arakaki did not know the suspect's last name. Detective Arakaki asked Grandmother if she knew anyone who had the same first name as Uncle 2, and Grandmother said no. On

cross-examination, Detective Arakaki stated that the police investigation concerning Aunt had been suspended and that as far as he knew, Child Protective Services had taken no further action.

The State also recalled Counselor, who testified that she had a meeting with Aunt and Minor on December 7, 2010. Counselor stated that Aunt asked several times whether Counselor was recording the meeting, and that Aunt appeared very scared and nervous. Counselor testified that Aunt was afraid of what would happen to her if her family found out that she was speaking to Counselor and Minor. According to Counselor, Aunt told Minor, "You know that I have to do what they say. You know what's going to happen to me[.]" Aunt stated that CF forced her to fill out paperwork for the restraining order that was filed against Minor, and that CF told Aunt what to write. Aunt was afraid someone would see her in Counselor's office. Counselor testified that Aunt admitted that the allegations in the restraining order were false. Counselor further testified that Aunt told Minor, "[t]hey're making me do this" and that "[Aunt] did not want to do what they were asking her to do." Aunt told Counselor that Aunt had been hurt by someone with the same first name as Uncle 2, but did not provide a last name.

DISCUSSION

I.

A.

Kaawa argues that the Circuit Court improperly allowed evidence of: (1) Kaawa's physical abuse of Minor and her siblings and (2) the allegations of sexual abuse of Aunt by Uncle 2. Kaawa contends that this evidence was inadmissible under HRE Rule 404(b). We disagree.

HRE Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation,

10

plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

The list of permissible purposes for the admission of "other bad acts" set forth in HRE Rule 404(b) is not intended to be exhaustive. State v. Clark, 83 Hawai'i 289, 300, 926 P.2d 194, 205 (1996). Under HRE Rule 404(b), any purpose for which bad-acts evidence is introduced is a proper purpose as long as the evidence is not offered solely to prove the defendant's criminal propensity. Id. at 300-01, 926 P.2d at 205-06 (citing United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990)). For example, in Clark, the Hawai'i Supreme Court upheld the introduction of prior uncharged acts of domestic violence perpetrated by the defendant against the complaining witness. The supreme court held that this evidence was admissible under HRE Rule 404(b) to show "the context of the relationship between the [complaining witness] and the defendant, where the relationship is offered as a possible explanation for the complaining witness's recantation at trial." Id. at 303, 926 P.2d at 208.

"Other bad act" evidence is admissible under HRE Rule 404(b) when: (1) it is relevant to any fact of consequence other than the defendant's propensity to commit the crime charged; and (2) its probative value is not substantially outweighed by the danger of unfair prejudice. State v. Renon, 73 Haw. 23, 31-32, 828 P.2d 1266, 1270 (1992). The trial court's decision in balancing probative value against unfair prejudice involves the application of HRE Rule 403[5] and is reviewed for abuse of

_____

[5] HRE Rule 403 (1993) provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

discretion.  State v. Cordeiro, 99 Hawai'i 390, 404, 56 P.3d 692, 706 (2002).

Kaawa does not dispute that the evidence he claims was improperly admitted was relevant.  Therefore, his HRE Rule 404(b) claim turns on whether the Circuit Court abused its discretion in admitting the evidence.  "An abuse of discretion occurs when the court 'clearly exceeds the bounds of reason or disregards rules or principles of law to the substantial detriment of a party litigant.'"  Id. (citations omitted).

B.

Kaawa's contention that the Circuit Court abused its discretion in admitting evidence of Kaawa's physical abuse of Minor and her two oldest brothers is without merit.  An underlying issue in the case was why Minor delayed reporting the alleged sexual abuse to authorities, and why she did not disclose the sexual abuse when first questioned by Detective Arakaki.  Minor testified that she refrained from reporting Kaawa's sexual abuse because she was afraid of Kaawa and members of his family.

The evidence that Kaawa had physically abused Minor and her two oldest brothers was directly relevant to providing a explanation for Minor's reluctance to report Kaawa's sexual abuse to authorities.  It provided the jury with a context to understand the relationship between Kaawa, Minor, and Minor's two oldest brothers, where that relationship was offered to explain Minor's delayed reporting and her initial denial when questioned by Detective Arakaki.  See Clark, 83 Hawai'i at 303, 926 P.2d at 208.  It corroborated Minor's testimony that her delayed reporting was motivated, in part, by fear of Kaawa.  It also helped to explain why Minor did not report the sexual abuse to her two oldest brothers or ask them to protect her against Kaawa's sexual abuse, and how Kaawa exercised control over Minor and her two oldest brothers such that Kaawa could feel empowered to sexually abuse Minor for years.  Given the nature of the allegations in this case, it was important for the jury to

12

understand the dynamics of the family relationships in order to fairly evaluate the evidence presented.

In addition, the evidence that Kaawa had physically abused Minor and her two oldest brothers was relevant to impeach Kaawa's credibility. Kaawa testified that he never hit the children and CF testified that she never saw any signs of abuse. When defense counsel broached this subject with CF, the Circuit Court warned defense counsel that he was opening the door "wide open." See State v. Brooks, 125 Hawai'i 462, 469-74, 264 P.3d 40, 47-52 (App. 2011) (concluding that a party may open the door to evidence that would otherwise be inadmissible). Despite this warning, defense counsel thereafter elicited CF's testimony that Kaawa never hit Brother 2. Defense counsel also elicited Kaawa's testimony that he never hit his kids and never let anyone else hit his kids.

We conclude that the evidence that Kaawa had physically abused Minor and her two oldest brothers was offered for valid purposes, unrelated to showing Kaawa's criminal propensity, and that the Circuit Court did not abuse its discretion in admitting this evidence.

C.

Kaawa contends that the Circuit Court abused its discretion in admitting evidence of the allegations of sexual abuse of Aunt by Uncle 2. We disagree.

Minor testified that she only disclosed to Aunt that Kaawa was sexually abusing Minor after Aunt disclosed to Minor something "personal" having to do with "abuse." Through its questioning of witnesses, the State suggested that the person who was alleged to have sexually abused Aunt was Uncle 2. Evidence that Uncle 2 had allegedly sexually abused Aunt was relevant to showing that Aunt had indeed confided in Minor something very private, which would serve to explain why Minor, in turn, would confide in Aunt that Kaawa had been sexually abusing Minor. Minor also testified that after their mutual disclosures, she and Aunt made a pact to tell Grandmother. However, when Aunt told

13

Grandmother about what was happening to Aunt, Grandmother reacted by yelling at Aunt, calling her a liar, and giving her "wacks." Minor explained that Grandmother's reaction to Aunt's disclosure dissuaded Minor from telling Grandmother about Kaawa's sexual abuse at that time.

Accordingly, evidence that Uncle 2 had allegedly sexually abused Aunt was relevant to provide context to Minor's testimony and explain why Minor was reluctant to go to Kaawa family members for help. Evidence that Uncle 2 had allegedly abused Aunt, but that Grandmother had punished Aunt for disclosing such abuse, also provided insight into Aunt's relationship with the Kaawa family and why she may have succumbed to pressure by the Kaawa family (including CF) to provide false testimony against Minor. The evidence challenged by Kaawa was admissible under HRE Rule 404(b).

In any event, Aunt's purported allegations of sexual abuse were not directed against Kaawa. In addition, the references to the alleged abuse of Aunt by Uncle 2 were brief, somewhat vague, and fleeting. Accordingly, we conclude that any error in the introduction of such references was harmless beyond a reasonable doubt.

II.

Kaawa argues that the HRE Rule 404(b) limiting instruction given by the Circuit Court was inadequate to cure the prejudicial effect of the challenged HRE Rule 404(b) evidence, "especially since this evidence of bad acts did not fit into the exceptions set out in HRE [Rule] 404(b)." The Circuit Court instructed the jury as follows:

> You have heard evidence that the defendant at another time may have committed other wrongs or acts. You must not use this evidence to determine that the defendant is a person of bad character and therefore must have committed the offenses charged in this case. Such evidence may be considered by you only on the issue of the defendant's motive, intent, plan, knowledge, and for no other purpose.

The Circuit Court's instruction served to protect Kawaa against the jury's improper consideration of the "bad acts"

14

evidence by instructing the jury that it could not use the evidence "to determine that the defendant is a person of bad character and therefore must have committed the offenses charged in this case." Although the instruction unduly restricted the jury's consideration of the evidence for proper purposes, those restrictions redounded to Kaawa's benefit. See State v. Tyrrell, 60 Haw. 17, 29-30, 586 P.2d 1028, 1036 (1978) ("A defendant cannot complain of an erroneous instruction which benefits him.") Accordingly, we conclude that the Circuit Court's instruction does not provide a basis for vacating Kaawa's convictions.

III.

Minor testified in graphic detail about the continuous and repeated acts of sexual abuse Kaawa committed against her. When viewed in the light most favorable to the State, Minor's testimony, as corroborated by other evidence presented by the State, was sufficient to support Kaawa's convictions. See State v. Eastman, 81 Hawai'i 131, 141, 913 P.2d 57, 67 (1996) (stating that the testimony of a single percipient witness may constitute substantial evidence to support a conviction); State v. Montgomery, 103 Hawai'i 373, 381, 82 P.3d 818, 826 (App. 2003) ("The testimony of a single witness, if found credible by the trier of fact, may constitute substantial evidence to support a conviction." (citation omitted)). We reject Kaawa's claim that the evidence was insufficient.

CONCLUSION

We affirm the Circuit Court's Judgment.

DATED: Honolulu, Hawai'i, February 25, 2014.

On the briefs:

Richard D. Gronna
for Defendant-Appellant

Jason R. Kwiat
Deputy Prosecuting Attorney
County of Hawai'i
for Plaintiff-Appellee

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge

15